Vaidik, Chief Judge, dissenting.
[23] I respectfully dissent. Conn did not have standing to challenge the evidence under Article 1, Section 11 of the Indiana Constitution, and I disagree with the majority's conclusion that the State failed to raise this issue in the trial court.
[24] The test for standing under Article 1, Section 11 was established by the Indiana Supreme Court in Peterson v. State , 674 N.E.2d 528 (Ind. 1996). In that case, a defendant charged with two murders challenged the search of his mother's apartment. The defendant had previously stayed in a bedroom in the apartment (his *1100 mother kicked him out the day before the search), and in the closet of that bedroom officers found a sawed-off shotgun. The shotgun was later found to have fired a spent casing recovered at the murder scene. The defendant argued that the admission of the gun into evidence violated the Fourth Amendment and Article 1, Section 11.
[25] Regarding the Fourth Amendment, the Court explained that a defendant challenging a search has the burden to demonstrate that he had a legitimate expectation of privacy "in the premises searched." Id. at 532. The defendant noted that "he had been living in and had property in the searched room," but the Court concluded, "While the defendant had previously lived in the room which was searched, at the time of the search, the defendant had no control or ownership in the premises searched." Id. at 533. As such, the defendant had "no reasonable expectation of privacy" and therefore lacked standing under the Fourth Amendment. Id. at 534.[5]
[26] The Court then addressed Article 1, Section 11. After reviewing the historical treatment of the provision, the Court held that a defendant can establish standing by demonstrating "ownership, control, possession, or interest" in either the premises searched (as under the Fourth Amendment) or "the property seized." Id. at 534. However, the Court's subsequent discussion of the case before it made clear that standing based on "the property seized" only allows for challenges to the actual seizure of the property, not to any entry that made the seizure possible. Specifically, the Court concluded that the defendant's admitted possessory interest in the gun gave him standing to challenge its seizure, but, "[a]s noted in our prior discussion [regarding the Fourth Amendment], the defendant does not have standing to challenge the entry into his former bedroom and closet. He has shown no ownership, control, possession or interest in the premises searched." Id. at 534-35 (emphasis added). Ultimately, although the defendant had standing to challenge the seizure of the gun, the Court affirmed the trial court's rejection of that challenge because the gun was in open view in the closet and was illegal (at the time, possession of a sawed-off shotgun was prohibited in Indiana). Id. at 535.
[27] So what good does "property seized" standing do for a criminal defendant if it does not permit challenges to the initial entry into the premises searched? The final paragraph of the Peterson Court's standing discussion illustrates one possibility. The Court noted that while one officer had testified that the gun was in open view in the closet, another had testified that it was found in a duffel bag. Though the Court deferred to the trial court's finding that the gun was in open view, the fact that the Court discussed the issue implies that if the officers had found the gun in a duffel bag claimed by the defendant, the defendant may have been able to make out an Article 1, Section 11 violation. See also State v. Friedel , 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (holding that defendant had standing to challenge search of her purse even if she *1101 did not have standing to challenge search of van in which purse was found).
[28] Here, Conn did not establish either "premises searched" standing or "property seized" standing. Regarding the premises, he did not present any evidence that he was an "owner" of the club, that he was a member of the club, that he was an invited guest, or that he had any sort of permission to be on the club's property. For all we know, Conn was a trespasser on the night of his arrest. Therefore, he had no standing to challenge the officers' initial entry onto club property. See Peterson , 674 N.E.2d at 534.[6]
[29] And to the extent Conn asserts "property seized" standing, that claim fails as well. He has never claimed or admitted any sort of interest in the methamphetamine or the paraphernalia. In fact, there is evidence that he specifically denied any knowledge of those items. See Tr. p. 108. As for the gun, while Conn admitted on the scene and in a post-arrest interview that he had possessed the gun momentarily for purposes of hiding it behind the building, there is no evidence that he had any possessory interest in the gun after he did so. The prosecutor told the judge outside the presence of the jury that Officer Hagerty was prepared to testify that the gun belonged to a woman who was at the club with Conn and that Conn said he was hiding it for her. Tr. pp. 38-43. Conn did not present any evidence to contradict this version of events, so he cannot claim that he had any continuing interest in the gun at the time the officers recovered it.[7]
[30] The majority does not address whether Conn had standing to make an Article 1, Section 11 claim, concluding instead that the State failed to raise the issue in the trial court and therefore waived it for purposes of appeal. I disagree. When Conn first objected to the evidence, the prosecutor pointed out that "there's been no evidence that the Defendant has any kind of reasonable expectation of privacy on private property whether it's his or had any right to be there." Tr. p. 37. The majority acknowledges this argument but holds that it went only to Conn's Fourth Amendment claim. Op. at 1095-96 n.2 (citing Litchfield v. State , 824 N.E.2d 356, 359 (Ind. 2005) ).
[31] But to the extent that the prosecutor's response was limited to Conn's lack of an interest in the premises, it was commensurate with Conn's own limited objection, which asserted only that the officers acted unconstitutionally by "entering onto private property." Tr. p. 36. Conn's objection made no mention of the officers' actions after they passed the locked gate, such as moving the boards and leaves that were covering the items or opening the coin purses. Where a defendant challenges the entry into the premises searched, our Supreme Court's decision in Peterson teaches that the standing analysis under Article 1, Section 11 is no different than the analysis under the *1102 Fourth Amendment. See 674 N.E.2d at 534 (indicating that conclusion that defendant had "no reasonable expectation of privacy," and therefore no standing, under Fourth Amendment was dispositive of "premises searched" standing under Article 1, Section 11 ); see also Allen v. State , 893 N.E.2d 1092 (Ind. Ct. App. 2008) (noting that there is not "much of a difference, if any, in result" regarding standing under Fourth Amendment and Article 1, Section 11"when a defendant's interest in seized property is not at issue"), reh'g denied , trans. denied . In short, because Conn's objection focused on the officers' initial entry onto club property, the prosecutor's statement that Conn had failed to establish that he had "any kind of reasonable expectation of privacy on private property," that "it's his," or that he "had any right to be there" served to challenge Conn's standing under both the Fourth Amendment and Article 1, Section 11. Therefore, the State did not waive the issue and has properly raised it on appeal.
[32] To be clear, I acknowledge that the officers' conduct in this case was constitutionally suspect. I simply conclude that Conn has not shown that he is entitled to challenge that conduct. As such, I would hold that the trial court properly admitted the challenged evidence and would affirm Conn's convictions.

I acknowledge that the U.S. Supreme Court has gone away from the concept of "standing" in the Fourth Amendment context. See Allen v. State , 893 N.E.2d 1092, 1096 (Ind. Ct. App. 2008) (discussing U.S. Supreme Court's conclusion that analysis of defendant's alleged privacy interest is better framed as issue of substantive Fourth Amendment law than issue of "standing"), reh'g denied , trans. denied . However, the Indiana Supreme Court has continued to use the term for ease of reference in cases that involve both the Fourth Amendment and Article 1, Section 11, see , e.g., Campos v. State , 885 N.E.2d 590 (Ind. 2008), and I do the same here.

For the same reason, I would also affirm the trial court's rejection of Conn's claim under the Fourth Amendment. See Peterson , 674 N.E.2d at 532-33.

Of course, Conn's failure to claim a possessory interest in the items, either at trial or on appeal, may have something to do with the fact that he was charged with illegally possessing those exact items. See , e.g., Person v. State , 764 N.E.2d 743, 749 (Ind. Ct. App. 2002) (explaining that defendant challenging search of house and seizure of gun, in case charging unlawful possession of a firearm by a serious violent felony, denied ownership of gun "for obvious reasons"), trans. denied ; Mays v. State , 719 N.E.2d 1263, 1267 (Ind. Ct. App. 1999) (explaining that defendant challenging search of apartment building atrium and seizure of cocaine, in case charging possession of cocaine, did not admit possessory interest in cocaine "for obvious reasons"), trans. denied .